*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1686**

State of Minnesota,
Respondent,

vs.

Douglas Thomas Deitering,
Appellant.

**Filed August 15, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-13-25356

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Tara Ferguson-Lopez, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

James M. Ventura, Wayzata, Minnesota; and

Jesse P. Oelfke, Carver, Minnesota (for appellant)


        Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Douglas Deitering faced a second-degree burglary charge for entering his former paramour's house and stealing or mutilating her bras, blouses, and panties. Deitering claimed during his bench trial that the damaged clothes found in his house were part of a planned erotic photoshoot that he and the victim had contemplated and that he never entered her home without permission. The district court deemed Deitering's assertions incredible and found him guilty. Deitering argues on appeal that the district court erred by excluding evidence of a sex tape featuring him and the victim, an email exchange between the two, and photographs of the victim in her underwear. He also argues that his trial counsel was ineffective for not requesting a separate hearing on the state's motions in limine regarding that evidence. Because the district court did not abuse its discretion by prohibiting the proffered evidence and because the allegedly deficient representation had no possible bearing on the outcome, we affirm.

## FACTS

The state charged Douglas Deitering with second-degree burglary after H.H. reported that he entered her Minnetonka house without permission, stole clothing from inside, and cut holes in clothing that he stole and in other clothing that he left behind.

According to the state's trial evidence, Deitering and H.H. were separately married, next-door neighbors who began a lengthy sexual affair around 2006. H.H. decided to end the sexual nature of the relationship sometime before July 2013, but the two continued to maintain a friendship, communicating socially in person and by email. Deitering repeatedly

2

attempted to rekindle the sexual relationship, but H.H. began seeing another man, J.Y. Deitering learned about J.Y. when he saw J.Y.'s phone number on H.H.'s telephone, and he confronted H.H., who told him that J.Y. was just a business caller.

The state also presented evidence that on July 31, 2013, H.H. severed her relationship with Deitering entirely. Deitering had moved to Eden Prairie, and H.H. met Deitering at his new home and told him that she wanted him out of her life. Three days later, in the early morning of August 3, H.H. was in bed at J.Y.'s home when she and J.Y. were awakened by noises outside. It was Deitering. He pounded on the door and yelled at J.Y. to send H.H. outside. J.Y. dialed 9-1-1 and asked for help. Police arrived to discover that Deitering had slashed the tires on H.H.'s car and scraped a message into the driver's side, "I cheat on my husband." Police found Deitering nearby and arrested him. Police also searched his car, finding utility knives, a black ski mask, binoculars, and two cut pieces of tan, nylon fabric.

H.H. returned to her own home later that day and discovered that someone had been inside. She found that most of her bras and panties were missing, and so were several of her dresses. A few remaining bras and blouses had been cut, leaving holes in the breast area. H.H. called police and reported the intrusion and vandalism, suspecting Deitering. There were no signs of forced entry, and Deitering knew the access code to H.H.'s garage. Police executed a search warrant at Deitering's house and discovered many articles of H.H.'s clothing inside his gun safe—dresses, bras, and panties. Some of the clothing had been haphazardly cut to leave exposing holes in the breast and crotch areas. Police found

3

pieces of fabric corresponding to the excised garments that police had recovered from H.H.'s home.

Deitering testified to counter the state's incriminating account. He told the court that his sexual relationship with H.H. had lasted until August 2, 2013. He claimed that several times during their affair H.H. had posed for him wearing lingerie. He said that on July 31 she met him at his home so he could photograph her. According to Deitering, H.H. brought bags of lingerie with her and spent the morning cutting sexually revealing holes in the clothing and modeling them while he took pictures. Deitering asserted that they had sex and that H.H. left at about noon for a meeting. In her haste, he said, H.H. mistakenly took a bag of her cut-up clothing with her. Deitering then put the remaining clothes in his gun safe so that his children would not find them. Deitering admitted to vandalizing H.H.'s car, but he denied entering her home and stealing or mutilating her clothes.

The district court considered the competing stories and rejected Deitering's. It found him guilty of second-degree burglary and denied his motion for a new trial.

Deitering appeals.

## DECISION

### I

Deitering argues that the district court erred by excluding evidence supporting his version of the events, depriving him of his rights to present a complete defense, to confront witnesses against him, and to a fair trial. Evidentiary rulings fall within the discretion of the district court. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). An appellant challenging an evidentiary ruling bears the burden of showing that the district court abused

4

its discretion and that its ruling unfairly prejudiced his defense. *Id.* When a district court incorrectly excludes evidence in violation of the defendant's constitutional rights, the verdict must be reversed if "there is a reasonable possibility that the verdict might have been different if the evidence had been admitted." *State v. Graham*, 764 N.W.2d 340, 351 (Minn. 2009) (quotation omitted). We apply this standard to the evidence that Deitering tried unsuccessfully to admit, which was a video recording of him and H.H. having sex, photographs of H.H. wearing lingerie, and email correspondence between them.

*Sex Tape*

Deitering tried to enter into evidence a video recording that he says was filmed in April 2013 and features him and H.H. having sex. The district court declared the video irrelevant and unduly prejudicial, suspecting that it was being offered only to shame H.H.

We reject as meritless Deitering's argument that the video was relevant to show that his sexual relationship with H.H. lasted until the time of the burglary. Evidence must be relevant to be admissible. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Even relevant evidence may be excluded if it is merely cumulative. Minn. R. Evid. 403. Both parties agreed that Deitering and H.H. were previously engaged in a sexual relationship, so the video is either irrelevant or unnecessarily cumulative on that fact. And it is similarly irrelevant or unnecessarily cumulative as to when the sexual relationship ended, because the district court found that the relationship ended at least by July 2013, which is three months after Deitering claims the video was recorded. The recording adds

5

nothing to the fact that the district court already found—that Deitering and H.H. had a sexual relationship that ended before the burglary.

***January to March 2013 Emails***

The district court ruled that certain emails were hearsay and irrelevant. Deitering and H.H. exchanged the emails between January and March 2013, discussing marital issues, health problems, and their relationship. Deitering argues that admitting the emails would have allowed him to impeach H.H.'s testimony as to when their relationship ended. H.H. testified that her affair with Deitering ended about a year and a half before the August 2013 burglary, but then she conceded that they might have had sex after that. A prior inconsistent statement that was not delivered under oath may be admitted for the purpose of impeachment. *State v. Thames*, 599 N.W.2d 122, 125 (Minn. 1999); Minn. R. Evid. 613. We have reviewed the emails and do not find anything in them clearly inconsistent with H.H.'s trial testimony or with the district court's findings. The email exchange, like the sex tape, occurred during a time that the district court found the relationship to be still ongoing. The emails were therefore irrelevant or needlessly cumulative.

***Photographs of H.H.***

The district court refused to admit a series of undated photographs showing H.H. wearing bras and panties, rejecting Deitering's contention that the photographs supported the allegedly planned clothing-cut-out photoshoot. *See* Minn. R. Evid. 404(b). The district court found the photographs irrelevant and unduly prejudicial. We are not persuaded to reverse by Deitering's argument that the photographs depict the "exact situation" of his proffered defense that he and H.H. were planning a "sexy" photoshoot involving garments

with the breast and crotch areas excised. The proffered photographs do not include underwear with cutouts. They do not make his argument any stronger, and they certainly do not depict the "exact situation" as the supposedly planned photoshoot that he described. The district court did not abuse its discretion by excluding the photos.

## II

Deitering argues that his trial counsel gave him ineffective assistance by failing to request a hearing on the state's motions in limine to exclude the same evidence that we have just held to be either irrelevant or needlessly cumulative. To succeed on this argument, Deitering must show both that his trial counsel provided objectively deficient representation and that but for the deficiency the evidentiary decision and the trial would have come out differently. *See Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987). Deitering does not explain how a full hearing would have resulted in a different evidentiary decision or how admitting the evidence would have prompted a different verdict. Because the underlying evidence is at best cumulative and would, at most, merely corroborate the fact-findings the district court already made, the second element of the constitutional argument fails. So even assuming Deitering could establish that any minimally competent attorney would have sought and secured a hearing on the motions, he cannot prevail on his ineffective-assistance-of-counsel claim.

**Affirmed.**